## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | No. 3:25cv773 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN M. KISTLER, JR.;** | : | |
| **BLUE MOUNTAIN MINISTRY, INC.;** | : | |
| **MICHAEL J. GARVEY; AND KRISTI L.** | : | |
| **CRAVETTS,** | : | |
| **Defendants** | : | |

## MEMORANDUM ORDER

Before the court for disposition is the government's motion for alternate process and extension of time for service of process. (Doc. 14). Defendants Blue Mountain Ministry, Inc. a/k/a Blue Mountain Ministry, LLC ("Ministry") and Michael Garvey ("Garvey") have yet to appear or defend in this action. No opposition to the motion has been filed by the remaining defendants.

By way of brief background, the government proceeds in this action against the defendants pursuant to 26 U.S.C. §§ 6321 and 6322. The government's complaint asserts claims for the foreclosure of federal tax liens and judgment lien against real property located in Pittston, Pennsylvania. (Doc. 1, Compl. ¶¶ 31-34). The Secretary of the Treasury made assessments of income tax liabilities against Defendant John Kistler ("Kistler") for the tax years 2008-2012. (Doc. 1, Compl. ¶ 13). In 2021, the government brought suit against Kistler to reduce the

tax assessments to judgment. (Id. ¶ 14).  The government alleges that the Ministry is Kistler's alter ego. (Id. ¶ 28).  In support of these allegations, the government asserts that Kistler used his personal funds, including part of his father's inheritance, to purchase the real property at issue in this case. (Id. ¶ 17). Additionally, Kistler titled the real property in the name of the Ministry. (Id.) Kistler allegedly uses the Ministry's bank accounts to pay for his personal living expenses. (Id. ¶ 21).

Defendant Kristi Cravetts a/k/a Kristi L. Kwiatkowski ("Kwiatkowski")—who is Kistler's daughter—is the purported Financial Secretary of the Ministry. (Id. ¶ 7).  Additionally, Garvey is allegedly the Trustee of "Guardians" for the Ministry. (Id. ¶ 6).  Hence, both Kwiatkowski and Garvey might have or claim an interest in the real property. (Id. ¶¶ 6, 7).

According to the government, it successfully served Kwiatkowski on May 14, 2025. (Doc. 14-1, at 2).  As for Kistler, he waived any objections to the service of process because he filed a motion to dismiss for lack of subject matter jurisdiction and venue without challenging service. (Id. at 2, see Docs. 6, 7).  Yet, the Ministry and Garvey have made it difficult for the government to serve them. (Doc. 14-1, at 2).

Per the government, it had six (6) failed attempts to serve the Ministry at its registered office. (Id.)  On June 10, 2025, after those failed attempts, the

government sent a notice of lawsuit and request for waiver of service of summons to the Ministry. (Id.) The request for waiver gave the Ministry thirty (30) days to return the signed waiver (Id.) The Ministry failed to respond to the request, and the deadline for a response has passed. (Id.) According to the government, the Ministry has notice of this action through Kistler— who is the Ministry's pastor and president of its board of directors—because he appeared in this action. (Id.)

Similarly, the government claims it attempted to serve Garvey at his home but was unsuccessful on six (6) separate occasions. (Id. at 4). Per the government, its process server left a door tag with contact information at Garvey's home. (Id.) As a result, Garvey's soon-to-be ex-wife, Maureen Garvey, called the server and reported that Garvey was living at the Ministry. (Id.) Maureen Garvey provided the government's process server with Garvey's phone number and a P.O. Box where he receives his mail. (Id.) As alleged by the government, its server called Garvey using that number, but no one answered. (Id.) Later, Garvey called the government's process server and stated that he was aware of the complaint. (Id.) Garvey also requested the process server send the documents to his Scranton P.O Box. (Id.) Upon requesting to serve him in person, Garvey allegedly told the process server "you can serve it to me when you can find me and catch up with me." (Id.) On June 10, 2025, after all the

failed attempts to serve Garvey, the government mailed a request for waiver of service to Garvey's P.O. Box. (Id.) The request for waiver gave him thirty (30) days to return the signed waiver (Id.) Garvey failed to respond to the request, and the deadline for a response has passed. (Id.)

Due to these unsuccessful attempts at service, the government moves to serve Defendants Garvey and the Ministry pursuant to Federal Rule of Civil Procedure 4(e)(1) and Pennsylvania Rules of Civil Procedure 430(a) and 410(c)(2) by: 1) posting a copy of the summons and complaint at the most public part of the real property subject to this action located in Pittston, Pennsylvania; and 2) by sending a copy of the summons and complaint to the Ministry's registered office and Garvey's current home address and P.O. Box by first class mail. (Doc. 14). Additionally, the government requests an extension of time to effect service of process on the same defendants. (Id.) The court will address the government's requests *seriatim*.

## 1. The Government's Request for Alternate Service of Process

Pursuant to the Federal Rules of Civil Procedure, an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1). In this case, the government invokes Pennsylvania Rules of Civil Procedure 430(a) and 410(c)(2) as the

grounds for effectuating service upon Defendants Garvey and the Ministry. (Doc. 14-1, at 4).

Under Rule 430(a) of the Pennsylvania Rules of Civil Procedure:

> If service cannot be made under the applicable rule the plaintiff may move the court for a special order directing the method of service. The motion shall be accompanied by an affidavit stating the nature and extent of the investigation which has been made to determine the whereabouts of the defendant and the reasons why service cannot be made.

PA. R. CIV. P. 430(a).

Furthermore, Pennsylvania Rule 410(c)(2) provides that, in real property actions, alternative service under Rule 430(a) must be made by one or more methods of service, including "posting a copy of the original process on the most public part of the property." PA. R. CIV. P. 410(c)(2).

"Service by special order is an extraordinary measure that is appropriate only after all other methods of service available under the rules have been exhausted." Countrywide Home Loans, Inc. v. Stringer, 2008 WL 3853239, at *2 (M.D. Pa. Aug. 15, 2008).

Under Pennsylvania law, a plaintiff must meet three conditions for alternative service: 1) the plaintiff must demonstrate "a good faith effort to locate the person to be served; 2) the "plaintiff must undertake practical efforts to serve defendant under the circumstances"; and 3) "[i]f the plaintiff has satisfied these first two steps, [the plaintiff] must then show that the proposed alternate method

5

of service is reasonably calculated to provide the defendant with notice of the proceedings against him [or her]." Olympic Steel, Inc. v. Pan Metal & Processing, LLC, 2012 WL 682381 (E.D. Pa. Mar. 2, 2012) (citing Calabro v. Leiner, 464 F.Supp.2d 470, 470–71 (E.D. Pa. 2006)).

"Rule 430 does not explicitly state the prerequisites for obtaining an order for alternative service," Deutsche Bank Nat. Trust Co. v. Marjer, Inc., 2014 WL 5410203, at *2 (E.D. Pa. Oct. 24, 2014). Nevertheless, the note to Rule 430 provides an illustrative list of efforts that plaintiff can make to meet the "good faith effort" requirement. The list consists of the following:

> (1) inquiries of postal authorities, including inquiries pursuant to the Freedom of Information Act, 29 C.F.R. Part 265, (2) inquiries of relatives, neighbors, friends, and employers of the defendant, (3) examinations of local telephone directories, voter registration records, local tax records, and motor vehicle records, and (4) a reasonable internet search."

PA. R. CIV. P. 430(a), note.

In support of its motion, the government attaches: 1) an affidavit of non-service describing its efforts to serve the Ministry three (3) times (Doc. 14-2, Ex. A); 2) an affidavit of non-service detailing its efforts to serve the Ministry on three (3) additional occasions, (Doc. 14-3, Ex. B); 3) a notice of lawsuit and request for waiver of service of summons that have been previously mailed to the Ministry (Doc. 14-4, Ex. C) ; 4) a return of non-service recounting three (3) attempts to

6

serve Garvey, (Doc. 14-5, Ex. D); 5) a notice of lawsuit and request for waiver of service of summons that have been mailed to the Garvey's P.O. Box address (Doc. 14-6, Ex. E); and 6) a certificate of non-concurrence documenting Garvey's refusal to concur in the motion and both Kistler's and Kwiatkowski's failure to reply. (Doc. 14-7). As explained below, these attachments outline the good faith efforts undertaken by the government to serve the Ministry and Garvey.

As for the first element for alternate process, the government must show a good faith effort to locate the Ministry and Garvey. As previously stated, the government has made six (6) separate attempts to serve the Ministry. The government's process server left a door tag with her contact information on the Ministry's door. (Doc. 14-1 at 3). Upon her return, the tag was no longer attached to the door. (Id. at 2). Moreover, the process server went to the Ministry's location multiple times one Sunday morning to determine whether a church service was taking place. (Id. at 2-3). However, she observed no one entering or exiting the property. (Id.) Additionally, online searches for the Ministry did not yield any phone numbers through which it could be reached. (Id. at 3). Similarly, an online search of the Ministry's location was unfruitful. (Doc. 14-2). The government's process server attempted to speak with the Ministry's neighbors, but they ignored her attempts. (Doc. 14-2). She also rang the Ministry's doorbell several times but received no response. (Id.)

With regard to the government's multiple efforts to serve Garvey, the government claims that it attempted to serve Garvey six (6) times. (Doc. 14-1, at 4). However, the affidavit of service only shows three (3) failed attempts. (Doc. 14-1, at 4; Doc. 14-5, Ex. D). Per the return of non-service form, the government left a door tag with contact information at Garvey's home. (Doc. 14-1 at 3; Doc. 14-5). The government also spoke to Garvey's soon-to-be former wife who mentioned that Garvey is living at the Ministry. (Doc. 14-1 at 3). The government also spoke with Garvey on the phone. (Id. at 3). Garvey also told the government's process server on the phone that he was aware of the complaint and directed her to send him the notice of lawsuit and request for waiver of service of summons to his P.O Box. (Id.) Then, Garvey expressly told the process server that she can serve him in person if she is able to locate him and catch up with him. (Id.) Still, after all the failed attempts, the government honored Garvey's wishes and mailed the service documents to his P.O. Box. (Id. at 4).

Given the circumstances at hand, the court infers that the Ministry and Garvey are actively evading service. See Olympic Steel, Inc., 2012 WL 682381, at *3 (permitting alternative service where plaintiff made seven attempts at service and noting that in such circumstances, "it is reasonable to infer that [defendants] are actively evading service"). The numerous failed attempts to serve both the Ministry and Garvey are indicative of the government's good faith

8

efforts to locate these defendants. For the same reasons, the government has demonstrated that it has undertaken practical efforts to effect service through traditional means on these defendants.

Considering the government's efforts, the court further finds that the proposed methods of alternate service, by (1) first class mail; and (2) by posting on the real property subject to foreclosure action are reasonably calculated to provide the Ministry and Garvey with notice of the foreclosure action. Because the Ministry's registered office is also the place where Garvey is allegedly living, posting a copy of the summons and complaint in the most public part of the Ministry's property in Pittston, Pennsylvania is an effective method to serve both defendants. Moreover, service by first class mail would further increase the likelihood of reaching both defendants—particularly Garvey, who specifically requested that the documents be sent to his P.O. Box.

Thus, the "extraordinary measure" of service by special order is warranted under the circumstances and the government's motion for alternative service will be granted.

### 2. The Government's Request for an Extension of Time for Service of Process

The government also requests a sixty (60) day extension of time to effectuate service of process on the Ministry and Garvey. The Third Circuit Court

of Appeals has analogized good cause to "the concept of excusable neglect of Federal Rule of Civil Procedure 6(b)(2), which requires a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules." MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1097 (3d Cir.1995) (internal quotation marks omitted). In determining whether good cause exists, the court's main focus should be on the plaintiff's reasons for failing to comply with the time limit from the outset. Id.

Here, the government has reasonable basis for noncompliance with the service deadline as the Ministry and Garvey seem to be actively evading service. Additionally, the government has demonstrated good faith in attempting to serve the defendants within the required timeframe. Thus, the court finds good cause to grant the government an additional sixty-day extension of time to serve the Ministry and Garvey. See FED. R. CIV. P. 4(m); Sanders-Darigo v. CareersUSA, 847 F. Supp. 2d 778, 784 (E.D. Pa. 2012).

Accordingly, for the reasons set forth above, it is hereby **ORDERED** that:

1) The government's motion, (Doc. 14), for alternative service of process and extension of time for service of process is **GRANTED**;

2) Within sixty (60) days of this order, the government shall effectuate service of process on Defendants Blue Mountain Ministry, Inc. a/k/a Blue

Mountain Ministry, LLC and Michael Garvey by: 1) posting a copy of the summons and the complaint in the most public part of the subject real property in Pittston, Pennsylvania located at 69 Tompkins Street Pittston, PA 18640; and by 2) by causing the summons and the complaint to be sent by first class mail to the registered office of Defendant Blue Mountain Ministry, Inc. a/k/a Blue Mountain Ministry, LLC located at 69 Tompkins Street Pittston, PA 18640, and Defendant Michael J. Garvey's last known home address at 1149 West Locust Street Apt 1, Scranton, PA 18504, and P.O. Box 3011 Scranton, PA 18505; and

3)  Service shall be completed upon posting or upon mailing, whichever occurs later.

Date: _8/8/25_

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

11